BATCHELOR *v.* STATE OF INDIANA.

[No. 23,632. Filed January 30, 1920.]

1. CRIMINAL LAW.—*Appeal.*—*Findings on Conflicting Affidavits.*—*Conclusiveness.*—Where there is conflict as to a given fact between the affidavits supporting, and those opposing, a motion for permission to withdraw a plea of guilty, the Supreme Court will regard the disputed fact as found in favor of the prevailing party, and will not disturb such finding on the weight of the evidence. p. 73.

2. CRIMINAL LAW. — *Constitutional Rights.* — *Waiver.* — A person prosecuted for a crime may waive the rights guaranteed to him by Art. 1, §13, of the Constitution. p. 76.

3. CRIMINAL LAW.—*Plea of Guilty.*—*Judicial Confession.*—A plea of guilty made advisedly by the accused, and with full knowledge of his rights and of the consequences, amounts to a judicial confession of the crime and a waiver of his right to a trial by jury; and, under such circumstances, the court may accept a plea of guilty even in a capital case. pp. 76, 79.

4. CRIMINAL LAW.—*Plea.*—*Rights of Accused.*—*Counsel.*—Under Art. 1, §13, of the Constitution, an accused has the right to con-

sult with counsel learned in the law and to be fully advised as to his rights and as to the consequences of his act before entering his plea.   p. 76.

5. CRIMINAL LAW.—*Rights of Accused.—Consulting Counsel.*—An accused's right to be heard by counsel, under Art. 1, §13, of the Constitution, is not limited merely to the trial, but the spirit of such provision contemplates the right to consult with counsel at every stage of the proceedings.   p. 76.

6. CRIMINAL LAW.—*Rights of Accused.—Counsel.—Waiver.*—Under a showing that one accused of murder was constantly in jail from the time of his arrest and the officers ignored his repeated requests to consult an attorney, that, on arraignment, he was in the custody of officers and without counsel, that the court informed him that he was entitled to an attorney and to a jury trial and that a plea of guilty would authorize the court to punish him according to the law, but did not state what the punishment would be, nor ask him if he desired an attorney and neither inquired as to his means for employing one nor informed him that it was the court's duty to appoint one, in case he was without means therefor, and that no offer to appoint or to provide counsel was made, such facts were not sufficient to constitute a waiver of the accused's right to appear by counsel, under Art. 1, §13, of the Constitution, and the acceptance of his plea of guilty was a denial of such right.   p. 77.

7. CRIMINAL LAW.—*Denial of Constitutional Right.—Reversible Error.*—A showing on appeal from a judgment of conviction that the defendant has been denied a right guaranteed by the Constitution requires a reversal, unless the record clearly shows that the right was waived or that no injury could have resulted to the accused by reason of such denial.   p. 79.

8. CRIMINAL LAW.—*Plea of Guilty.—Rights of Accused.—Duty of Court.*—Where one charged with a capital offense appears before the court without counsel and offers to enter a plea of guilty, the court, before accepting such plea, should make sure that the defendant has full knowledge of his rights, and that he fully comprehends and appreciates the serious consequence of such plea.   p. 79.

9. CRIMINAL LAW.—*Plea of Guilty.—Rights of Accused.—Violation.—Effect.*—Where one charged with murder in the first degree was arraigned without counsel and the court informed him that a plea of guilty would authorize the court to punish him according to law, but did not state what the punishment would be, nor inform him that, in case of his conviction in a jury trial, the jury in its discretion would have the right to decide whether the penalty should be death or life imprisonment, nor inform

him that by pleading guilty he waived his right to have a jury exercise such discretion, it cannot be said that a plea of guilty then accepted, upon which the death sentence was pronounced by the court, was voluntarily made with full knowledge of the consequences. p. 81.

10. CRIMINAL LAW. — *Plea of Guilty.* — *Evidence Involuntarily Given.*—*Striking Out.*—Where an accused in custody of officers was arraigned without counsel and pleaded guilty to first-degree murder, but without being fully advised as to the consequences of such plea, and thereupon the court examined him under oath, elicited damaging evidence from him, found him guilty and pronounced the death sentence, such evidence should have been stricken out and not considered by the court in passing on a subsequent motion for leave to withdraw the plea of guilty, since, under the circumstances, the evidence was self-incriminating and not voluntarily given. p. 82.

11. CRIMINAL LAW.—*Prejudicial Testimony.*—*Denial of Motion to Strike Out.*—*Harmless Error.*—Where an accused was arraigned without counsel and pleaded guilty without full knowledge as to the consequences, and the court found him guilty and pronounced the death sentence, such evidence could not properly be considered by the court in passing on a motion for leave to withdraw the plea, and error in refusing to strike it out may not be held harmless on the ground that it was already before the court, since such evidence, being obtained in violation of the accused's rights under Art. 1, §13, of the Constitution, was not before the court for any purpose. p. 83.

12. CRIMINAL LAW. — *Appeal.* — *Evidence.* — *Prejudicial Error.* — *Harmless Error.*—Though the Supreme Court will disregard errors where the record shows the judgment to be right and that no other judgment could have been properly rendered under the law and the evidence, such rule applies only where there is legal and competent evidence to support the court's conclusion. p. 83.

13. CRIMINAL LAW.—*Plea of Guilty.*—*Motion to Withdraw.*—*Alleging Innocence.*—Where an accused, in custody of officers and without counsel, pleaded guilty without full knowledge as to the consequences, and the court, after eliciting damaging evidence from him, found him guilty and pronounced the death sentence, a subsequent motion of the accused for leave to withdraw the plea and to set aside the judgment, on the ground that the accused was denied his right to counsel under Art. 1, §13, of the Constitution, need not allege that he was innocent of the crime charged or that the death penalty was not justified under the circumstances, it being sufficient to show that the accused was denied a constitutional right. p. 84.

From Lake Criminal Court; *Martin J. Smith,* Judge.

Prosecution by the State of Indiana against Albert C. Batchelor. From a judgment of conviction for murder in the first degree, the defendant appeals. *Reversed:*

*George E. Hershman,* for appellant.
*Ele Stansbury,* Attorney-General, and *A. B. Cronk,* for the state.

Lairy, J.—On July 2, 1919, the grand jury of Lake county, Indiana, returned into the Lake Criminal Court an indictment against appellant charging him with the crime of murder in the first degree. On the same day appellant was brought from the jail in which he was confined into court, and, being arraigned and asked to plead to the indictment, entered a plea. of guilty, which the court accepted. On the next day appellant was brought into court, and the court found him guilty as charged in the indictment of murder in the first degree, and that he should suffer death in the manner prescribed by law, and pronounced judgment accordingly.

On July 5, two days later, appellant by his attorney filed in the Lake Criminal Court his motion for an order granting him leave to withdraw his plea of guilty entered on July 2, and to enter a plea of not guilty, and also for an order setting aside the finding and judgment of the court entered on such plea of guilty on July 3, 1919. This motion was by the court overruled. The appellant excepted to such ruling, and on appeal bases his assignment of error thereon.

The verified motion filed by appellant was accompanied by affidavits in its support, and the state filed

affidavits in opposition thereto. It seems to
1.  be the rule adopted by this court that, where
there is a conflict between the affidavits filed in
favor of a motion such as this and those filed in oppo-
sition thereto as to a given fact, this court will regard
such disputed fact as found in favor of the prevailing
party, and that it has no power to disturb such find-
ing on the weight of the evidence. *Wells* v. *Bradley,
etc., Co.* (1891); 3 Ind. App. 278, 29 N. E. 572; *Casto*
v. *Shew* (1904), 32 Ind. App. 338, 68 N. E. 1041. In
view of the rule thus stated, the court will consider
only the facts disclosed by the affidavit filed by the
state and the uncontroverted facts shown by the mo-
tion of appellant and the affidavits in its support.

The material facts thus shown are that appellant
was twenty-three years of age. On June 27, he was
arrested in Chicago and taken to the Forty-eighth
street police station at about two o'clock a. m. and
kept there for about an hour, after which he was taken
to the Harrison street station and kept there until
about six o'clock of the same morning. He was then
removed to Gary, Indiana, and placed in the city jail
at that place, where he was confined until July 1, when
he was removed to Crown Point and confined in the
Lake county jail. While he was confined in Chicago
and afterwards while he was confined in the jail at
Gary, he made frequent requests of the officers in
charge to send word to his relatives and to permit
him to see and consult with a lawyer. The officers
refused to comply with either of these requests, tell-
ing him that he would have a chance for that later.
On July 2, the next day following that on which ap-
pellant was taken to Crown Point, he was taken before
the court at about two o'clock p. m. to plead to the

indictment returned against him by the grand jury. After he was taken into the courtroom, he was told that he was indicted and that he had been brought in to answer to the indictment, at which time he stated that he desired to be represented by a lawyer. The facts thus far set out are stated in appellant's affidavit and are not controverted.

The affidavit of Judge E. Miles Norton, who was present in court at the time appellant was arraigned and entered his plea, is clear and concise as to what occurred at that time, and the facts therein stated are not controverted as to any material matter. Affiant was the judge of the circuit court of Lake county and was present in the criminal court on the afternoon of July 2, 1919. According to the statement in this affidavit, appellant was brought into court before the Hon. Martin J. Smith, judge of said court, and the indictment was read to appellant. Appellant was then informed by the court that he could have a lawyer and that he had a right to have a lawyer; that he could plead not guilty and have a jury trial; that if he pleaded guilty he would give the court a right to punish him as provided by law. The defendant then informed the court that he was guilty and that he desired to plead guilty. The court then said, "Now you understand that upon your plea of guilty, it will be the duty of the court to impose the penalty as provided by law," and appellant then stated that he so understood it. The court then said, "With that understanding I will accept your plea of guilty."

It is shown that, within a few minutes after this occurred, appellant was sworn and interrogated, and that he gave testimony before the court as to the details of the crime charged in the indictment and

his connection therewith. A copy of the testimony is attached to the affidavit filed by the prosecuting attorney in opposition to appellant's motion.

Many other facts are set forth in affidavits, but only such facts are stated in the opinion as are deemed material to the decision and such only as are not controverted. Mr. Platt, a deputy sheriff of Lake county, states in his affidavit that he had charge of appellant during the time he was confined in the Lake county jail, and that appellant did not at any time before he was sentenced request him to send word to any relative or lawyer, and that no lawyer for appellant was refused permission to see him during that time. It will be observed that this affiant does not say that he had charge of appellant when he was taken to the courtroom to plead to the indictment. Appellant states that when he was in the courtroom he said that he wanted an attorney to appear for him. It does not appear that he made the statement to the court, and it must be assumed that he made it to a deputy who had him in charge.

Richard Kilborn in his affidavit states that he was the deputy who had charge of appellant in the courtroom and on his way to and from the courtroom on the afternoon on which the plea was entered and he does not deny the statement made by appellant in regard to his requests for an attorney.

It is shown by affidavit that appellant did not, at the time he was called upon to plead, state to the court that he desired an attorney, but it is not shown that he was asked by the court whether he desired to have a lawyer. The statements of appellant to the effect that, while he was in jail at Gary for four days before he was taken to Crown Point, he made fre-

quent requests of the officers in charge to be permitted to see and to consult with a lawyer and that such requests were refused are not in any manner controverted.

Under the showing made, appellant asserts that he was denied a right guaranteed by the Constitution of the state. Section 13 of the Bill of Rights provides: "In all criminal prosecutions the accused shall have the right to a public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face; and to have compulsory process for obtaining witnesses in his favor." Constitution, Art. 1, §13.

A person prosecuted for a crime may waive the rights guaranteed to him by this provision of the Constitution, and the court is called on to decide whether under the facts shown in this case appellant did or did not waive such rights. Appellant pleaded guilty to the crime of murder in the first degree. If this plea was made advisedly with full knowledge of his rights and of the consequences of such a plea, it amounted to a judicial confession of his crime and a waiver of his right to a trial by jury; but before entering such plea he had a right to consult with counsel learned in the law and to be fully advised as to his rights and as to the consequences of his act.

It has been held that a constitutional right to be heard by counsel is not limited to the right to be heard by counsel at the trial, but that the spirit of the provision contemplates the right of accused to consult with counsel at every stage of the

proceedings. *People, ex rel.* v. *Risley* (1883), 66 How.
Pr. (N. Y.) 67; *State* v. *Moore* (1900), 61 Kan. 732, 60
Pac. 748. In the case first cited the court said: ''Perhaps the literal letter of the constitutional provision
would be complied with ·by allowing to the accused
the benefit of counsel upon the 'trial,' but such a construction would illustrate the truth of that part of
the old legal maxim which declares: 'The letter killeth,' and disregard its conclusion, 'while the spirit
giveth life.' Undoubtedly the clause of the Constitution under consideration was adopted to secure to
the accused person all the benefits which could flow
from the employment of counsel to conduct his defense; and to give him those it is essential that he
should be allowed to consult with his counsel not
only during the actual trial, but prior thereto, in order
to prepare for his defense. Where a right is conferred by law, everything necessary for its protection
is also conferred, although not directly provided for.
The privilege of the presence of counsel upon the
trial would be a poor concession to the accused if the
right of consultation with such counsel prior to the
trial was denied. To give life and effect, therefore,
to the provision of the Constitution under consideration, it must be held to confer upon the relator every
privilege which will make the presence of counsel
upon the trial a valuable right, and this must include a
private interview with his counsel prior to the trial.''

There can be little doubt, under the facts disclosed
in this case, that appellant was denied the right to be
heard by counsel as guaranteed by the letter
and the spirit of our state Constitution. There
is nothing to show that appellant waived this
right. From the time of his arrest on June 27 to the

time he entered his plea to the indictment he was constantly confined in jail under the surveilance of officers of the law, who refused or ignored his repeated requests to be permitted to see and consult with a lawyer. At the time he was brought before the court and arraigned, he had been given no opportunity to be advised by counsel as to his rights or as to the consequences of any plea he might enter, and he was not accompanied by a lawyer appearing in his behalf at the time. The judge of the court told him that he had a right to have a lawyer, but he did not ask him if he desired to have one. The court did not inquire as to what means appellant possessed by which he could employ a lawyer, and did not inform him that it was the duty of the court to appoint a lawyer to appear for him in case he possessed no means to employ one. Appellant was at the time in the custody of the officers of the court and was not free to act on his own volition, and yet the court did not direct any officer of the court to call a lawyer to consult with him and made no offer to appoint an attorney for that purpose. Under the facts stated, appellant cannot be held to have waived his constitutional right to appear by counsel. The denial of a constitutional right to a person prosecuted for a crime is *prima facie* prejudicial. *People* v. *Murray* (1891), 89 Mich. 276, 50 N. W. 995, 14 L. R. A. 809, 28 Am. St. 294; *People* v. *Hartman* (1894), 103 Cal. 242, 37 Pac. 153, 42 Am. St. 108; *Tilton* v. *State* (1908), 5 Ga. App. 59, 62 S. E. 651; *State* v. *Osborne* (1909), 54 Ore. 289, 103 Pac. 62.

Where it appears on appeal from a judgment of conviction in a criminal case that the defendant has

been denied a right guaranteed by the Constitution, such showing requires a reversal, unless the record clearly shows that the right was waived or that no injury could have resulted to the accused by reason of such denial.

If appellant had been permitted to consult with counsel learned in the law before he was arraigned, he would have been informed that he had a right to be tried by a jury of twelve men whose duty it would be to decide the question of his guilt and also to fix the amount of his punishment; and that, in case he was found guilty of murder in the first degree, the jury would have a right to exercise its discretion in fixing his punishment at death or at imprisonment for life. He would have been told that he could not be required to give evidence against himself either as tending to show that he was guilty of the offense charged or as tending to show any aggravating circumstances to be considered in fixing his punishment. He would have been informed also that, in case he pleaded guilty, such plea would be a confession that he was guilty of murder in the first degree, and that the court would be authorized on that plea to find him guilty of murder in the first degree without hearing any other evidence.

He would have been further informed that the effect of such a plea would be not only to waive his right to have the question of his guilt decided by a jury, but also to waive his right to have a jury exercise its discretion in determining whether he should be punished by the infliction of the death penalty or by imprisonment for life, and that the court as a result of such waiver would have a right to impose either the death penalty or

the penalty of imprisonment for life as its discretion might dictate. Where it appears that a defendant is thus fully advised as to his rights and as to the consequences of his plea, and that with such knowledge he deliberately enters a plea of guilty, the court is justified in accepting it even in a capital case. But, where a defendant charged with a capital offense appears before the court without counsel, and offers to enter a plea of guilty, the court, before accepting such plea, should make sure that the defendant has full knowledge of his rights, and that he fully comprehends and appreciates the serious consequences of the plea which he is proposing to enter.

In this case, as has been said, appellant appeared for arraignment and plea without counsel. The court had no right to assume that he was fully advised as to his rights and as to the consequences of a plea of guilty. Under such circumstances the court was required to use caution in proportion to the gravity of the consequences. 1 Greenleaf, Evidence (14th ed.) §216, states the rule on this subject which is generally followed by the courts: ''Confessions are divided into two classes, namely, *judicial* and *extrajudicial*. Judicial confessions are those that are made before the magistrate or in court, in the due course of legal proceedings; and it is essential that they be made of the free will of the party, and with full and perfect knowledge of the nature and consequences of the confession. Of this kind are the preliminary examinations, taken in writing by the magistrate, pursuant to statutes; and the plea of guilty made in open court, to an indictment. Either of these is sufficient to found a conviction, even if to be followed by a sentence of death, they being deliberately made, under

the deepest solemnities, with the advice of counsel, and the protecting caution and oversight of the judge. Such was the rule of the Roman Law * * * and it may be deemed a rule of universal jurisprudence.''

In the case at bar the consequences of a plea of guilty were not fully explained to appellant before the plea was accepted. It appears that the court advised appellant, before he entered his plea, that, if he pleaded guilty, that would give the court the right to punish him according to law, but it is not shown that the court told him what penalty the law authorized the court to inflict. After the plea and before accepting it, the court asked appellant if he understood that it became the duty of the court to impose the penalty as provided by law; but the court at no time informed him that if he pleaded guilty to murder in the first degree it would be the duty of the court to impose on him the penalty of death or that of imprisonment for life, and that the court in its discretion would determine whether the penalty to be imposed should be death or the lesser penalty of imprisonment for life. He was not informed that, in case he was tried by a jury and found guilty of murder in the first degree, the jury in its discretion would have the right to decide whether the penalty to be imposed should be death or imprisonment for life and that by pleading guilty he waived the right to have a jury exercise its discretion as to that matter. Under such circumstances, it cannot be said that appellant voluntarily entered his plea of guilty with full and perfect knowledge of the consequences of such a plea. *Mislik* v. *State* (1915), 184 Ind. 72, 110 N. E. 551; *Dobosky* v. *State* (1915), 183 Ind. 488, 109 N. E. 742; *Pope* v. *State* (1908), 56 Fla.

81, 47 South. 487, 16 Ann. Cas. 972; *Krolage* v. *People* (1906), 224 Ill. 456, 79 N. E. 570, 8 Ann. Cas. 235; *Little* v. *Commonwealth* (1911), 142 Ky. 92, 133 S. W. 1149, 34 L. R. A. (N. S.) 257, Ann. Cas. 1912D 241.

A few minutes after appellant had pleaded guilty, he was sworn and interrogated in the presence of the court as to the facts and circumstances leading up to and attending the commission of the crime charged in the indictment. It will be presumed that the purpose of the examination was to inform the court as to the facts so that it might the better exercise its discretion as to the punishment to be imposed. The facts thus elicited from the appellant were of a nature very damaging. Had appellant been represented by counsel, he would have been informed that he could not be compelled to testify against himself and he would have been advised to assert his constitutional right to refuse to answer the questions which elicited the prejudicial facts and circumstances which seem to have been considered by the trial court in determining which of the penalties provided by law should be imposed.

The deputy prosecuting attorney who appeared for the state at the time the plea was entered and the testimony elicited from appellant as aforesaid filed an affidavit in opposition to appellant's motion for leave to withdraw his plea. To this affidavit the evidence so elicited was attached as an exhibit and was referred to therein and made a part thereof. Before the court ruled on the motion, appellant moved for an order striking out the evidence so made a part of the affidavit. This evidence should have been stricken out and should not have been considered by the court in passing on the merits of the motion.

The evidence was self-incriminating in its character and was not voluntarily given by appellant. It was given while he was in the custody of officers of the law after he had been charged with the commission of a crime. He was not advised as to his constitutional rights on the subject before he testified, and he had not been permitted to consult with counsel so as to be informed as to what his rights on the subject were. It has been frequently held that incriminating evidence elicited from an accused person under such circumstances is not voluntarily given. *State* v. *Clifford* (1892), 86 Iowa 550, 53 N. W. 299, 41 Am. St. 518; *Gardner* v. *People* (1883), 106 Ill. 76; *State* v. *Matthews* (1872), 66 N. C. 106; 1 Greenleaf, Evidence (14th ed.) §224; *Jackson* v. *State* (1879), 56 Miss. 311; *People* v. *McMahon* (1857), 15 N. Y. 384; *People* v. *Mondon* (1886), 103 N. Y. 211, 8 N. E. 496, 57 Am. Rep. 709.

The Attorney-General in the brief filed by the state asserts that this error was harmless because it appears that the evidence contained in the exhibit 11. was already before the court, but this is begging the question. The evidence was not properly before the court for any purpose, because it was obtained by a violation of a right guaranteed to appellant by the Constitution of our state.

This court is asked to consider the evidence so elicited from appellant as showing that the character of the crime and the circumstances under which 12. it was committed were such as to warrant the extreme penalty of the law. It is well settled that this court will disregard errors when it clearly appears from the record that the judgment is right and that no other judgment could have been properly

rendered under the law and the evidence, but this rule applies only in cases where there is legal and competent evidence from which the court can arrive at its conclusion. The only evidence legally in the record as to the guilt of appellant is his plea of guilty, and there was no other legal evidence of his guilt before the trial court at the time it made its finding or at the time the ruling was made on the motion from which this appeal is taken.

This court cannot say from a consideration of the evidence properly in the record that the judgment is so conclusively right as to warrant the court in disregarding errors which have the effect of invading the constitutional rights of appellant.

It is suggested that the motion for leave to withdraw the plea and to be permitted to plead not guilty does not allege that appellant was innocent of the crime charged or that the crime was committed under such circumstances as would not justify the infliction of the extreme penalty of the law. The burden of making such a showing did not rest on appellant; it is enough for him to show that he was denied a right to which he was entitled under the Constitution. Our law is no respecter of persons. The rights of just and upright citizens are not more sacred in the eyes of the law than the rights of the poorest and meanest citizens of the state. The safeguards erected by the Constitution are intended to protect the rights of all citizens alike. They protect the rights of the guilty as well as those of the innocent. The court cannot give its sanction to the conviction of any person accused of crime where the proceedings on which the judgment is based show the denial of a right to which the defendant was entitled

under the Constitution. Such judicial sanction, in any case, would destroy the efficacy of the constitutional safeguards to protect the rights of all citizens of the state.

Under the facts shown by the record, the trial court should have granted the appellant's motion for leave to withdraw his plea of guilty and should have permitted him to enter a plea of not guilty. In denying such a motion the court abused its discretion.

The judgment is reversed, with instruction to the trial court to sustain appellant's motion for leave to withdraw his plea of guilty. The clerk of this court is directed to make and certify the usual order for the return of the appellant to the custody of the sheriff of Lake county, Indiana.