## HOELSCHER *v.* STATE OF INDIANA

[No. 28,015. Filed November 30, 1944. Rehearing denied December 28, 1944.]

*Oscar B. Thiel,* of Gary, and *Louie H. Dunten,* of Fort Wayne, for appellant.

*James A. Emmert,* Attorney General, *Frank Hamilton,* First Deputy Attorney General, and *Frank E. Coughlin,* Deputy Attorney General, for the State.

FANSLER, J.—In December, 1943, the appellant entered a plea of guilty to an indictment charging him with murder in the first degree and was sentenced to life imprisonment. In March, 1944, he filed a motion to vacate the judgment and for leave to withdraw his plea of guilty and enter a plea of not guilty. The State filed an answer, and, upon the issue thus joined, there was a hearing and judgment denying appellant's motion. This ruling is assigned as error.

The original judgment of conviction recites in part: ". . . said Defendant being asked first by the Court, if he knows the nature and consequences of the crime of which he is charged and if he has or desires counsel and being advised by the Court of his right to be represented by counsel either of his own choice or by appointment by the Court, the Defendant thereupon informs the Court that he does not desire counsel and that he does know the nature and consequences of the crime of which he is charged, and that said Defendant being arraigned pleads guilty . . ." The appellant's verified motion to withdraw his plea alleges that he was arrested in Des Moines, Iowa, and brought to Fort Wayne three days before he entered his plea of guilty, and that prior to the entry of his plea of guilty the court did not appoint an attorney to represent him; that he was nineteen years of age and was unable to comprehend the gravity of the

proceedings, and that he was not informed by the court that an attorney would have to be appointed for him whether he had funds or not; that he was entirely without funds, had no relatives or friends, and did not know what his rights were; that he was not informed of his right to a trial by jury, and that it was the duty of the State to prove him guilty beyond a reasonable doubt, and that he could not be compelled to give evidence against himself; that he was not advised that in case of a jury trial it was the duty of the jury to determine the punishment, and that upon the indictment returned against him he could be found guilty of either murder in the first degree, second degree, or manslaughter; that he was not informed of the punishment for manslaughter, but only of the punishments for murder in the first and second degrees; that he is not guilty of the offense for which he was convicted; that he was not advised that in a trial for murder he could allege and prove justifiable homicide by self-defense; that he has been a member of the Armed Forces of the United States, a private in the Marine Corps; that he contracted malaria fever and was discharged, and that he was still under the influence of his illness at the time of the offense, and that he did not have full possession of his physical and mental faculties. No evidence was introduced to support these allegations save the verified petition itself.

The State's answer was supported by the affidavit of the prosecuting attorney, the sheriff, a deputy sheriff, a member of the Indiana State Police Force, and by a verified transcript of evidence taken by the court reporter at the time of the plea of guilty. It appears from the affidavits that the sheriff arrested the defendant in Iowa and brought him to a State Police post in

Indiana; that he was then "advised by the officers of his constitutional rights and was asked if he cared to make a statement." He readily admitted the killing and described the crime in detail. He was then taken to the Allen County jail. No promise or duress was used to induce him to admit his guilt. Upon arrival in Fort Wayne the prosecuting attorney was called and informed that the defendant wished to enter a plea of guilty to murder in the first degree. The prosecuting attorney inquired of the defendant as to his desire to enter a plea of guilty and whether he wanted the services of an attorney, and the defendant said he did not have an attorney and did not want one, but wanted to enter a plea of guilty and get on his way as soon as possible. The prosecuting attorney said he would immediately call the grand jury into session and have an indictment returned. The prosecuting attorney accompanied the sheriff and police officers who took the defendant to the eastern part of Allen County where the defendant reenacted the crime and told how much money he had taken from the person of his victim. While there the defendant asked the prosecuting attorney what the penalty was for what he had done, and the prosecutor advised that the penalty imposed by statute for first degree murder was either life imprisonment or death in the electric chair, and upon a plea of guilty the punishment was in the court's discretion, but that the prosecutor would recommend life imprisonment rather than the electric chair, to which the appellant replied "that he would consider that a 'break.'" The prosecuting attorney read the statute defining murder in the first degree to the defendant, and advised the defendant of his right to have an attorney if he so desired, and of his right to a trial by jury, to which he replied that he did not want

an attorney or a jury trial, that he fully understood the statute and penalties and was ready to enter a plea of guilty. After the court passed sentence the defendant expressed gratification that he had escaped the electric chair. The officers asked the defendant who his relatives were and offered to notify them, but he replied that he did not want his relatives to know anything about the matter, and refused to disclose who or where they were. All of these witnesses, after reciting the extent of their conversations with and observation of the appellant, expressed the opinion that he was possessed of all his mental faculties, was of sound mind, and fully understood the nature and consequences of his act in pleading guilty.

The transcript of the examination of the defendant at the time he plead guilty discloses that he was questioned by the prosecuting attorney and the judge. He was asked by the prosecuting attorney whether he had an attorney and whether he wanted one, to both of which questions he replied in the negative. The indictment was read to him. He was asked if he was aware of his constitutional rights, and that he had a right to be tried by a jury or the court, and he answered "yes," and that he desired to waive a trial by jury. He was asked if he was advised of his right to have a lawyer if he wanted one. He said "yes," and then he was asked: "Is that your desire . . . to waive those rights?" He answered: "Yes, that's right." At the suggestion of the court the statute was read to him. He was asked whether, having heard the indictment and the statute fixing the penalty, he was ready to enter a plea. He answered "yes," and was asked if his plea was guilty or not guilty, to which he replied "guilty." He was asked whether any promise was made to him to induce him to enter a plea of guilty,

and he answered "no." He was asked if he entered the plea knowingly, and he answered "yes." He was asked: "And you are guilty of murder in the first degree?" and he answered "yes." The prosecutor then suggested that, in view of the defendant's military record, he would recommend life imprisonment rather that the electric chair. The court then asked: "Do you think the man is possessed of his mental faculties?" The prosecutor answered: "I do, Your Honor." The court inquired of the defendant if he knew what he was doing, to which he answered: "Yes, Sir." The court then asked him: "You are not laboring under any delusions?" and he answered: "No, Sir." The statute was again read to him by the court, and he was again asked if he was willing that the court impose the sentence, whatever it might be, and he answered "yes." The entry above referred to was then made by the court.

Appellant says that it does not appear that he intelligently and understandingly waived his constitutional right to a trial by jury and to be represented by counsel. This is a question of fact to be determined primarily by the trial court, and unless we can say that upon the evidence there can be no reasonable difference of opinion, the decision of the trial court must stand. We must consider not only the printed words, but the reasonable inferences which might be drawn by the trial court from the judge's observation of the appellant at the time he accepted the plea. The law requires an intelligent and understanding waiver of constitutional rights. No special form of words is required. The intelligence and understanding of the appellant might be as clearly indicated by his manner and appearance as by the

actual words used in his conversation with the trial judge.

When a defendant has freely and understandingly waived and refused the services of an attorney it is not necessary that he be instructed concerning all of the intricacies of the criminal law, including the nature of and punishment for lesser offenses and possible defenses under every conceivable state of facts. It is required only that he be advised of the nature of the charge against him and his right to have an attorney to advise him concerning the law if he so desires. He was advised of the character and nature of the charge and the punishment therefor, of his right to plead guilty or not guilty and to be tried by the court or by a jury. He was charged with having committed a homicide "unlawfully, feloniously and purposely and with premeditated malice." It must be assumed from the showing made that he understood the meaning of these terms and that the offense thus described was far different from a lawful killing in self-defense, or upon a sudden heat, or involuntarily in the commission of some unlawful act.

It is contended that a minor is incompetent to enter a plea of guilty. As supporting his contention the appellant cities *Irwin* v. *State* (1942), 220 Ind. 228, 41 N. E. (2d) 809, and *Williams* v. *Huff, General Superintendent, etc.* (1944), 142 Fed. (2d) 91. In the Irwin case one of the appellants was a minor, and the judgment denying the right to withdraw a plea was affirmed. The appellant relies upon the language of the opinion to the effect that [page 240 of 220 Ind., page 813 of 41 N. E. (2d)]: "A judgment has been said to be a judicial contract, and where a judgment has been entered upon a plea of guilty the contract is by agreement." But it is not even suggested

in the opinion that an infant may not enter a plea of guilty without advice of counsel. In the Williams case it was held by a majority of the court that the competence of a minor to enter a plea of guilty was a question of fact for the trial court, in the determination of which his youth was entitled to serious consideration. Since time immemorial minors have been permitted to plead freely in criminal prosecutions without the aid of guardian or committee. We find no constitutional, statutory, or common-law rule to the contrary.

We conclude that the only question is whether the plea was entered understandingly and intelligently. Under the evidence we cannot say that it was not so entered.

We find nothing in *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773, inconsistent with the views here expressed.

Judgment affirmed.

Note.—Reported in 57 N. E. (2d) 770.