## HOELSCHER v. HOWARD, Warden.
### No. 8981.

Circuit Court of Appeals, Seventh Circuit.
May 17, 1946.

Rehearing Denied June 18, 1946.

Oscar B. Thiel, of Gary, Ind., for appellant.

James A. Emmert, Atty. Gen., and Frank E. Coughlin and Karl J. Stipher, Asst. Attys. Gen., for appellee.

Before SPARKS and KERNER, Circuit Judges, and BRIGGLE, District Judge.

KERNER, Circuit Judge.

Appellant is a prisoner in the Indiana State Prison, serving a life sentence for murder in the first degree, pursuant to a judgment of conviction upon his plea of guilty imposed on December 20, 1943, by the Circuit Court of Allen County, Indiana. He petitioned the District Court for a writ of habeas corpus. From an order dismissing the petition, this appeal is prosecuted.

The indictment under which appellant was tried and convicted charged that on November 19, 1943, with premeditated malice, appellant shot and killed one Jack T. Scheine.

In his petition for habeas corpus Hoelscher alleged that his education consisted of a common school education and that at the time of his arraignment he was nineteen years of age; that in May, 1943, because of malaria fever, he had been honorably discharged from the United States Marines; that he was arrested on December 10, 1943; and that prior to his arraignment, the prosecuting attorney had informed him that if he would enter a plea of guilty to a charge of murder in the first degree, "the Prosecuting Attorney would see that * * * petitioner would get only a life sentence, but if he entered a plea of not guilty, he, the said Prosecuting Attorney, would see that the petitioner was sentenced to death in the electric chair, and * * * petitioner because of his inexperience, the absence of any relatives or friends who would give him advice, his limited education, his youth, and the information given him by the Prosecuting Attorney that he could have no attorney unless he had money to pay for one, his stress in mind and body, his physical weakness and his inability to think a situation through, both on account of the effects of the disease from which he was still suffering, and his youth and inexperience, induced * * * petitioner to enter said plea of guilty without advice of counsel."

The petition further alleged that at the time he was brought before the court and arraigned he had been given no opportunity to be advised by counsel as to his rights or as to the consequence of any plea he might enter, and that the judge never informed him that he had a right to a lawyer.

The petition also alleged that when he was brought into court, he was examined as follows:

"Q. Earl William Hoelscher—is that your name? A. Yes.

"Q. Do you have an attorney? A. No.

"Q. Do you want one? A. No.

"Q. Will you listen while the clerk reads to you a grand jury indictment? · ". . . Reporter's note: Indictment read by clerk.

"Q. Are you aware of your constitutional rights? that you have a right to be tried by a jury or to be tried by a court? A. Yes.

"Q. And is it your desire to waive the trial by jury and be tried by the Court? A. Yes.

"Q. And you also were advised of your rights to have a lawyer if you want one? A. Yes.

"Q. Is that your desire—to waive those rights? A. Yes, that's right.

"Q. You have heard the indictment of the grand jury just read to you by the clerk of this court. Are you ready to enter a plea to that indictment?

". . . The Court: Before he pleads I think it would be well to advise him of the statute, the penalty, before he pleads.

". . . Mr. Bloom to defendant: Before you enter your plea we will read to you the statute in Indiana, which is Section 10-3401, Burns' 1933 Indiana Statutes: 'Whoever purposely and with premeditated malice, or in the perpetration of or attempt to perpetrate a rape, arson, robbery, or burglary, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death or be imprisoned in the state prison during life.'

"Q. Having heard the statute read to you and having heard the indictment of the grand jury read, are you now ready to enter your plea? A. Yes.

"Q. And is your plea guilty or not guilty? A. Guilty.

"Questions by Court.

"Q. Mr. Hoelscher? A. Yes sir.

"Q. Has there any promise been offered to you or made to you to induce you to enter a plea of guilty? A. No sir.

"Q. You do this knowingly and of your own free will and accord? A. Yes sir.

"Q. And you are guilty of murder in the first degree? A. Yes sir.

". . . Mr. Bloom: I might say to the court that the discretion lies solely with the court what the penalty shall be. There is an alternate penalty of life imprisonment or death in the electric chair. This man isn't represented by counsel. He has signed confessions both in Des Moines, Iowa, and one in Ligonier, Indiana. He has accompanied the police and sheriff and state police on a tour of re-enactment of his crime. He has cooperated with the state.

"He has a background that is unfortunate from childhood on. He did serve with his country until malaria fever caused an impairment of his health so that he could no longer carry the colors on Guadalcanal. And for those reasons the state feels—I feel it is incumbent on me, from my knowledge of the facts, to recommend to the court life imprisonment rather than the electric chair. * * *

"The court: Do you think the man is possessed of his mental faculties?

". . . Mr. Bloom: I do, your Honor.

"Q. You know what you are doing, do you, Mr. Hoelscher? A. Yes sir.

"Q. You are not laboring under any delusions? A. No sir.

"How old are you? A. Nineteen, sir.

"Q. Well, the statute was read to you a minute ago, under which you have pled guilty. Again I will read it to you: 'Whoever purposely and with premeditated malice, or in the perpetration of or attempt to perpetrate a rape, arson, robbery, or burglary, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death or be imprisoned in the state prison during life.'

"Q. Have you anything to say now as to why I should not impose sentence? A. No sir.

"Q. You are willing that I now impose the sentence, whatever it may be? A. Yes sir.

". . . Reporter's note: At this point the court entered his minutes on the docket sheet, and when the same had been completed read said entry in the presence and hearing of the defendant and to the defendant, in the following words, to-wit: 'Defendant present in court and on being asked if he has or desires the services of an attorney before pleading to the indictment says he does not care to have the services of an attorney. Defendant is arraigned and pleads guilty. Cause submitted, evidence heard, finding that defendant is guilty of murder in the first degree and that defendant is nineteen years old. Ordered that defendant be and hereby is committed to the Indiana State Prison for and during his natural life.' "

The petition also averred that on March 7, 1944 he moved the Allen Circuit Court to

vacate the judgment of conviction, grant leave to withdraw his plea of guilty and to enter a plea of not guilty; that the court denied the motion; that upon appeal the Supreme Court of Indiana affirmed Hoelscher v. State, 57 N.E.2d 770, and the United States Supreme Court denied certiorari, 325 U.S. 854, 65 S.Ct. 1087, 89 L.Ed. 1975.

It is upon this state of the record that appellant contends that the court erred in dismissing his petition for a writ of habeas corpus.

■■■ Appellant's main contention is that the appointment of counsel in a capital offense is a necessary prerequisite to due process of law.

In support of this contention, appellant cites Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398, and Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527. We have studied these cases and have reached the conclusion that they are inapplicable here for the reasons presently stated.

In the Williams case the petitioner requested the aid of counsel, but that case did not involve the question of whether a person could waive appointment of counsel if he desired to do so. The Williams case originated in the State of Missouri and the Powell case in the State of Alabama. Both of these States have statutes requiring the appointment of counsel for a person charged with a felony, and since counsel was not appointed, the defendants involved in those cases were denied fair trials. Under the laws of Indiana the appointment of counsel is not absolutely necessary and counsel may be waived. Hoelscher v. State, supra. We think that the court in the case of Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, has enunciated the applicable rule, that is, that the appointment of counsel in a felony case is not required under the Fourteenth Amendment to the United States Constitution unless there is a state statute requiring such appointment. See also Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435.

■■■ Appellant next makes the point that his right to counsel had not been waived; that he was not informed that there were degrees of homicide in Indiana; and that on an indictment for murder in the first degree, he could be found guilty of a lesser included offense.

The Indiana Supreme Court in passing upon the identical contentions held specifically that he had competently and intelligently waived his constitutional rights and in its opinion it said: "When a defendant has freely and understandingly waived and refused the services of an attorney, it is not necessary that he be instructed concerning all of the intricacies of the criminal law, including the nature of and punishment for lesser offenses and possible defenses under every conceivable state of facts. It is required only that he be advised of the nature of the charge against him and his right to have an attorney to advise him concerning the law if he so desires. He was advised of the character and nature of the charge and the punishment therefor, of his right to plead guilty or not guilty and to be tried by the court or by a jury. He was charged with having committed a homicide 'unlawfully, feloniously and purposely and with premeditated malice.' It must be assumed from the showing made that he understood the meaning of these terms and that the offense thus described was far different from a lawful killing in self-defense, or upon a sudden heat, or involuntarily in the commission of some unlawful act." Hoelscher v. State, supra, 57 N.E.2d 772.

Appellant, however, claims that the decision did not involve the federal questions presented by his petition for habeas corpus. With this we cannot agree; rather, we think the decision of the court is based upon the grounds of whether Hoelscher had been advised of his constitutional rights, whether he intelligently waived those rights, and whether he was competent to do so. We find support for this belief in appellant's petition for certiorari. In that petition, appellant stated the questions presented were whether he had been denied due process of law and whether he was able and competent to waive

his right to be represented by counsel. In such a situation a federal district court will not usually re-examine on habeas corpus the questions thus adjudicated. White v. Ragen, 324 U.S. 760, 765, 65 S.Ct. 978, 89 L.Ed. 1348.

The order of the District Court is affirmed.