David A. **WOODS**, Defendant-Appellant,

v.

**STATE** of Indiana, Plaintiff-Appellee.

No. 1–281A63.

Court of Appeals of Indiana,
First District.

Sept. 29, 1981.

Harriette Bailey Conn, Public Defender, William F. Evans, Sr., Deputy Public Defender, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

This appeal arises from a denial of defendant-appellant David A. Woods' (Woods) petition for post conviction relief under Ind. Rules of Procedure, Post Conviction Rule 1.

We affirm.

### STATEMENT OF THE FACTS

On February 6, 1969, Woods was charged by affidavit with the offense of theft, the essence of which being the utterance of a worthless check. The offense was a felony and carried a maximum penalty of one year imprisonment and a $500 fine. After interrogating Woods on his financial ability, the trial court advised him that he had the right to the services of a lawyer at all stages of the proceeding, and if Woods did not have the money and means to hire a lawyer the court would appoint him one at public expense. Woods told the court he so understood, but stated that he did not want an attorney. The court, reading from the Indiana Constitution, told Woods that he had a right to a trial by an impartial jury in

the county where the crime was committed; to be heard by himself and attorney; to demand the nature and cause of the accusation against him, and to have a copy; to have compulsory process to obtain witnesses in his favor; freedom from compulsory self-incrimination; and that such rights applied to him, Woods. Woods acknowledged that he understood the rights applied to him and he understood the proceedings up to that point. Woods declined the proffered copy of the affidavit, though indicating he understood it was his constitutional right to have it.

Upon further interrogation, Woods informed the trial court that no one had made him any promises or threatened him to induce a guilty plea. He stated his plea was voluntary and with full understanding. The trial court told him that if he did not plead guilty he was entitled to a hearing and a trial as quickly as could be done without unreasonable or unnecessary delay, to which Woods responded, "Yes, sir," and said that he was ready to be arraigned.

The trial court read Woods the full affidavit and explained it to him in lay language. Thereupon, the following verbatim colloquy occurred:

"BY THE COURT: You understand that and you are telling the court that any plea made by you will be made freely and voluntarily and with full understanding by you?

BY DAVID A. WOODS: Yes, sir.

BY THE COURT: With full understanding of what you are charged with and what the consequences may be?

BY DAVID A. WOODS: Yes, sir.

BY THE COURT: Well, the affidavit having been read to you, are you now ready to plead?

BY DAVID A. WOODS: Yes, sir.

BY THE COURT: How do you plead, guilty or not guilty?

BY DAVID A. WOODS: Guilty.

BY THE COURT: By that you are telling me that you did commit this offense?

BY DAVID A. WOODS: Yes, sir.

BY THE COURT: That you did utter this check in the amount of $20.00 knowing that you did not have the money in the bank to pay the check?

BY DAVID A. WOODS: Yes, sir."

On March 3, 1969, Woods was sentenced to one year and fined $1.00. However, on August 5, 1969, the balance of the sentence was suspended. Because of this offense and other felonies committed later, Woods was eventually convicted as an habitual offender. On March 25, 1980, he filed this petition under P.C.R. 1 challenging the February 1969 plea of guilty in an apparent attempt to undermine the Habitual Offender conviction by causing the underlying felonies to be set aside.

At the trial on the P.C.R. 1, Woods testified he had understood that if he pleaded guilty there would be no trial, and nothing left except the sentencing. He further conceded that he had waived his right to an attorney. He stated that he understood the charge, he had a right to a lawyer, a jury trial, a right not to testify, and a right to compulsory process to obtain witnesses. He specifically complained that he was never told of a right to appeal, and the citation of the statute under which he was charged.

ISSUES

Woods presents eight assignment of errors for review which we restate as follows:

I. Whether it was reversible error not to cite the statute under which he was charged;

II. Whether it was reversible error not to advise him of his right to appeal upon a plea of guilty;

III. Whether the court erred in finding that defendant understood there would be no jury trial upon his plea of guilty;

IV, V, VI. Whether the rule in *Boykin v. Alabama* and the rules in Ind.Code 35–4.1–1–3 and Ind.Code 35–4.1–1–4 apply to a guilt plea hearing on February 7, 1969; and

VII, VIII. Whether the court erred in finding that Woods failed to meet his burden of proof.

## DISCUSSION AND DECISION

### Issue I. Failure to cite statute under which he was charged

Woods first challenges the adequacy of the guilt plea proceedings because the affidavit failed to contain the citation of the statutory provision alleged to have been violated as now required by Ind.Code 35–3.-1–1–2(a)(3) (Supp.1978). That provision did not exist in 1969, but was first enacted in 1973. Assuming, *arguendo*, it applied, we note that such failure, in the language of the section itself, does not constitute reversible error unless the defendant was misled.

■ Contrary to his assertion here, Woods testified at the trial of the P.C.R. 1 that he did understand the nature of the charge against him, that is, a false check. Insomuch as this statutory requirement did not exist at the time of the arraignment in 1969, Woods, to prevail here, must show that such omission has constitutional dimensions. This he has not done. Such an omission raises constitutional implications only to the extent that it bears on the inquiry of whether the defendant knowingly, voluntarily, and intelligently entered a plea of guilty. This subject is discussed elsewhere in the opinion.

■ Woods has failed to persuade us how the omission misled him since he had refused to read the affidavit after it was tendered to him, refused the services of an attorney, and pleaded guilty only after the court read him the charge and explained it to him.

### Issue II. Right to appeal

Woods next argues the trial court erred in not advising him at arraignment that he had a right to appeal. However, he neither cites specific authority, nor makes any cogent argument in support of this proposition. Instead, he cites general constitutional provisions and cases which relate generally to the court's duty to advise an accused of his constitutional rights.

■ Woods correctly asserts that a convicted defendant has a constitutional right to appeal. *Peterson v. State*, (1965) 246 Ind. 452, 206 N.E.2d 371. However, the method and procedure is generally a matter conferred by statute. *In re Pisello*, (1973) 155 Ind.App. 484, 293 N.E.2d 228. For the most part, a conviction based on a plea of guilty cannot be challenged by a motion to correct errors and a direct appeal; rather, the appropriate procedure is under P.C.R. 1. An exception to the general rule lies where there is an error in the imposition of a sentence on the face of the record, *Weyls v. State*, (1977) 266 Ind. 301, 362 N.E.2d 481, and perhaps, where other constitutional infirmities appear on the face of the record as in *Hathaway v. State*, (1968) 251 Ind. 374, 241 N.E.2d 240, in which case the appellate tribunal is not *necessarily* bound by procedural irregularities.

■ Woods had no absolute right of appeal from a conviction based upon a guilty plea; therefore, it was not error for the trial court not to advise him that he did. We note presently Criminal Rule 11, which requires an advising by the trial court of a right to an appeal, applies by its language only to a conviction after trial. Woods' remedy was a P.C.R. 1, which he has pursued, and thus he may not now complain.

### Issues III, IV, V, VI, VII and VIII.

These issues are similar and we will address them together. Woods essentially argues that the trial court at arraignment did not advise him of all his constitutional and statutory rights, and therefore, he did not voluntarily, knowingly, and intelligently enter a guilty plea. He further puts great emphasis upon the assertion that he was not advised of the consequences of his plea. Throughout these arguments, Woods fails to distinguish between guilty pleas entered prior to the decision in *Boykin v. Alabama* (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 and those entered afterward. Furthermore, he does not differentiate between guilty pleas entered before and after the 1973 enactments of Ind.Code 35–4.1–1–3 and Ind.Code 35–4.1–1–4.

*Boykin* held that before a conviction based on a guilty plea can be sustained the

record must affirmatively show an in-court advice and waiver of the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. Our Supreme Court has declined to give *Boykin* retroactive application. *Conley v. State,* (1972) 259 Ind. 29, 284 N.E. 2d 803; *Campbell v. State,* (1975) 262 Ind. 594, 321 N.E.2d 560.

■ Analysis of pre-*Boykin* cases and cases occurring prior to Ind.Code 35–4.1–1–3 and Ind.Code 35–4.1–1–4 discloses that the trial judge was not required to address the accused with the same degree of specificity required in post-*Boykin* cases occurring after the enactment of the statutes cited above. The cases have held that where pleas of guilty were entered after the enactment of the statutes, failure of the court to advise in accord with the statutes was reversible error. Woods urges that application here. However, in *Goffner v. State,* (1979) Ind., 387 N.E.2d 1321, 1323, our Supreme Court rejected such contention:

"Prior to *Boykin*, the law in Indiana was stated by the case of *Harshman v. State* (1953) 232 Ind. 618, 115 N.E.2d 501. In reversing and remanding the cause for the withdrawal of a guilty plea, this Court stated in that case:

'Under our practice an accused may enter a plea of guilty in any case, and thereby waive his constitutional right to trial by jury. But to be valid and binding upon the accused, such a plea must be made by the accused intelligently, advisedly and understandingly, with full knowledge of his rights, and with the considered approval of the judge before whom he stands charged.

'A valid plea of guilty in court having jurisdiction of the offense is a judicial confession of guilt. *Batchelor v. State,* 1920, 189 Ind. 69, 125 N.E. 773. It admits the incriminating facts alleged. 22 C.J.S. Criminal Law § 424. It should be *cautiously* received. It should not be accepted from one who does not know, or who, at the time of arraignment, asserts that he does not

know, whether or not he has committed the crime charged, for such would be entirely incompatible with the idea of an admission of guilt, and wholly inconsistent with the due administration of justice.

'. . . [s]o far as the record before us discloses, *no evidence whatever pointing to appellant's guilt was adduced, either before, during or after the entry of the plea.'* 232 Ind. at 620–21, 115 N.E.2d at 502. (emphasis added.)

It is clear from these principles that before accepting a guilty plea the pre-*Boykin* trial court had to insure that the accused was informed of the elements of the crime with which he was charged and was required also to find facts which supported the entry of the plea.

Although the authorities now require the record of the guilty plea proceeding to demonstrate the voluntariness of the plea and the advisement of the rights, we think that judicial review of pre-*Boykin* pleas need not be so narrow. Thus, in determining the propriety of a pre-*Boykin* guilty plea, a post-conviction court may consider not only the record of the proceeding at which the plea was formally accepted, but also the entire range of surrounding circumstances, including any other proceedings and events in the same approximate time frame."

The pre-*Boykin* court's duty was described in *Conley, supra,* 259 Ind. at 34–35, 284 N.E.2d 803:

"Indiana case law has long recognized the importance of a full inquiry into the voluntariness of guilty pleas obtained from defendants who are without the services of counsel:

'A court should accept pleas of guilty from defendants charged with serious crime who are unrepresented by counsel, when they are manifestly young and inexperienced or obviously lacking in intelligence or knowledge of the spoken language, with caution and only after reasonable inquiry into the facts to discover whether a plea of guilty is entered freely and understandingly.

*Dobosky v. State* (1915), 183 Ind. 488, 491, 109 N.E. 742, 743.'

Further, our trial judges have an affirmative duty to advise unrepresented defendants of their constitutional rights and the consequences of a decision to plead guilty.... If the trial judge fails to discharge this obligation, the defendant will be entitled to either withdraw his plea or present the issue of its voluntariness in a post conviction proceeding."

The law requires an intelligent and understanding waiver of constitutional rights; no special form of words is required. The intelligence and understanding of the appellant might be as clearly indicated in his manner and appearance as by actual words used in his conversation with the trial judge. *Gates v. State*, (1962) 243 Ind. 325, 183 N.E.2d 601. In *Gates*, the court held that the trial court's action in advising the accused he had the right to the services of a lawyer, at public expense if need be; a trial; have witnesses subpoenaed in his behalf; to know the nature of the offense; and the penalty, followed by the accused's responding that he did not want a lawyer, and understood the nature of the charge, was sufficient basis for the court to accept the plea of guilty.

"It was the duty of the trial court here to make a *reasonable* inquiry into the facts to discover whether a plea of guilty was entered freely and understandingly. *Dearing v. State* (1951), 229 Ind. 131, 139, 95 N.E.2d 832.

\* \* \* \* \* \*

An accused who has freely and understandingly waived and refused the services of an attorney need not be instructed by the trial judge concerning all of the intricacies of the criminal law. It is enough if the defendant is 'advised of the nature of the charge against him, the punishment for that specific offense, and his right to have an attorney to advise him concerning the law, if he so desires.' *State v. Minton* (1955), 234 Ind. 578, 584, 130 N.E.2d 226; *Hoelscher v. State, supra* [,

223 Ind. 62, 57 N.E.2d 770]." (Emphasis added.)

243 Ind. 329–30, 183 N.E.2d 601.

In *Minton*, a colloquy between the court and defendant, which was almost identical to that in the case at bar, was held sufficient by the court. The fact that, unknown to the court, the defendant was on parole and parole was revoked thereby extending the sentence, did not change the result.

 In post conviction proceedings, the petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence. *Kindred v. State*, (1977) 173 Ind.App. 624, 365 N.E.2d 776; P.C.R. 1, § 5. The judge hearing the petition is the sole judge of the weight of the evidence and the credibility of the witnesses. *Carroll v. State*, (1976) 265 Ind. 423, 355 N.E.2d 408. The decision is in the nature of a negative judgment and will be set aside only upon a showing that the evidence is without conflict and leads unerringly to a contrary result. *Maxey v. State*, (1978) 269 Ind. 224, 379 N.E.2d 465.

 We are, therefore, of the conclusion that the record of the guilt plea hearing and Woods' testimony was sufficient to establish that Woods' plea was entered voluntarily, knowingly and intelligently under pre-*Boykin* standards, and that he was advised sufficiently and knew the consequences of his plea.

For the above reasons, this cause is affirmed.

Judgment affirmed.

ROBERTSON and RATLIFF, JJ., concur.