**UNITED STATES of America**

v.

**Calvin GANTT.**

**Crim. No. 86–287.**

United States District Court,
W.D. Pennsylvania.

March 9, 1987.

Charles A. DeMonaco, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

David G. Rothey, Asst. Federal Public Defender, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

DIAMOND, District Judge.

Before us is defendant's motion to dismiss the indictment for failure to aver three legal convictions. Specifically, defendant claims that one of the predicate convictions to the present prosecution was obtained without the benefit of defense counsel; hence, it cannot be used to enhance a sentence or support a conviction under the Armed Career Criminal Act of 1984, 18 U.S.C. Appendix II § 1202(a) (the "ACCA"). As we will explain, we agree that this unconstitutional conviction cannot be used for sentence enhancement under the ACCA, but we deny defendant's motion to dismiss the indictment.

### Background

The indictment charges the defendant, Calvin Gantt, with possession of a firearm, a .22 caliber rifle, after having been convicted of three felony burglaries or robberies in violation of 18 U.S.C. Appendix II § 1202(a), the ACCA.[1] The government has filed with the court certified records of the three predicate convictions. All three convictions occurred in Florida. In 1969, Gantt was convicted of robbery, for which he received a sentence of five years at hard labor. In 1965, Gantt pled guilty to break-

---

1. The ACCA has been recodified at 18 U.S.C. §§ 922(g) and 924(e). The text has not changed.

ing and entering with intent to commit a misdemeanor and received a sentence of two years at hard labor. Gantt does not challenge the constitutional validity of either of these convictions.

For our purposes, we focus on Gantt's 1962 conviction for breaking and entering with intent to commit a felony. For that offense, the court sentenced him to one year at hard labor. The certified record is silent as to whether he had counsel. The government has conceded that he did not. Defense counsel has informed the court that Gantt is preparing an attack on this conviction in the Florida state courts. Though reserving its right to prove that Gantt waived counsel in the 1962 prosecution, the government has stipulated for purposes of this motion that the 1962 conviction was unconstitutional under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

In the time since the parties briefed this motion, the Third Circuit decided *United States v. Hawkins*, 811 F.2d 210 (1987), where it held that the ACCA does not create a separate offense but rather imposes enhanced penalties on certain violators of the Gun Control Act of 1968, Pub.L. 90–351, Title VII, 82 Stat. 236 (codified at 18 U.S.C. Appendix II § 1202(a)(1)).[2] In light of *Hawkins*, the present indictment charges a violation of the Gun Control Act—possession of a firearm by a person having a felony conviction—and notifies Gantt that the government will seek an enhanced sentence under the ACCA. Thus, the issue before us is whether a conviction obtained in violation of *Gideon* can be used to enhance sentence under the ACCA. The government argues that this issue is identical to that which confronted the Supreme Court in *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), where the court held that an uncounseled conviction could support a conviction under the Gun Control

Act. Relying on the line of cases that culminated in *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), Gantt contends that the 1962 conviction cannot be used to enhance punishment.

*Discussion*

We must first analyze the meaning of "conviction" as used by Congress in the ACCA. Only then can we consider the constitutional implications of the statute. *See United States v. Graves*, 554 F.2d 65, 77 & n. 40 (3d Cir.1977) (en banc).

A.  Legislative Intent.

■ The ACCA, enacted as part of the Comprehensive Crime Control Act of 1984, Pub.L. 98–473, Title II, §§ 1802, 1803, 98 Stat. 2185, states:

> In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than 15 years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such a person shall not be eligible for parole with respect to the sentence imposed under this subsection.

Subsection 1, to which the statute refers, is the Gun Control Act construed in *Lewis* and *Graves*. Though the Gun Control Act and the ACCA were separately enacted, the integration of the ACCA into § 1202 and the ACCA's explicit reference to the Gun Control Act require that we look to that act in interpreting the ACCA. *Cf. United States v. Hawkins*, at 219 (holding that the ACCA is a sentence enhancement amendment to the Gun Control Act, not a separate offense).

---

2.  The Gun Control Act states in pertinent part:
   Any person who—
   (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, . . .

and who receives, possesses, or transports in commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years or both.
18 U.S.C. Appendix II § 1202(a)(1).

■ The ACCA speaks only of "convictions," without qualifying them in any way. When Congress wanted to, it could and did expressly limit the types of convictions that a court may consider. *See, e.g.,* 18 U.S.C. § 3575(e) (repealed effective Nov. 1, 1987, Pub.L. 98–473, §§ 212(a)(2), 235). Construing similar language in the Gun Control Act ("convicted by a court ... of a felony"), the Supreme Court held that Congress did not intend to exclude unconstitutional convictions from the statute's sweep. *Lewis,* 445 U.S. at 60–62, 100 S.Ct. at 918–19; *see also Graves,* 554 F.2d at 69. Especially since Congress referred to the Gun Control Act when defining the predicate offenses under the Armed Career Criminal Act, we may assume that Congress considered and assented to this broad definition of "convictions." *See Lorillard v. Pons,* 434 U.S. 575, 580–81, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978).

The legislative history does not offer much insight into what Congress meant by "convictions." Senator Specter, the sponsor of the bill, compared the bill to the Dangerous Special Drug Offender sentencing statute, 21 U.S.C. § 849, which does allow collateral attack on unconstitutional convictions, *see* 21 U.S.C. § 849(e), but this reference was made in the context of discussing the double jeopardy implications of the bill. 129 Cong.Rec. § 297 (January 26, 1983). In his comparison, Senator Specter did not discuss the meaning of "convictions." The history does not clarify the meaning of "convictions." Thus, we stand by the conclusion that follows from the plain language of the statute and the courts' reasoning in *Lewis* and *Graves:* "convictions" includes those unconstitutionally obtained.

### B. The Constitutional Issue.

Resolution of the constitutional issue presented in this case requires us to examine closely the apparently inconsistent precedents on this point.

In *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the defendant's conviction and sentence under a Texas recidivist statute were based in part on a prior felony conviction at which defendant was not represented by counsel. The Supreme Court overturned the conviction and sentence, holding that a conviction obtained in violation of *Gideon v. Wainwright* may not "be used against a person either to support guilt or enhance punishment for another offense (*see Greer v. Beto,* 384 U.S. 269, 86 S.Ct. 1477, 16 L.Ed.2d 526)." 389 U.S. at 115, 88 S.Ct. at 262. The court reasoned that allowing such use of this prior conviction would erode the principle of *Gideon,* and, "[w]orse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right." *Id.*

In *United States v. Graves,* 554 F.2d 65 (3d Cir.1977) (en banc), the Third Circuit held that a conviction of questionable constitutional validity could serve as the predicate for conviction under the Gun Control Act, "especially where the defendant challenges the constitutionality of the prior conviction on grounds other than a denial of counsel and previously has refused to avail himself of ample opportunities to eradicate the weapons disability." 554 F.2d at 82. In *Graves,* the defendant claimed that in his previous prosecution, he had been transferred from juvenile to adult treatment without benefit of constitutionally required procedures. Underlying the court's opinion was its belief that the Gun Control Act was fundamentally a regulatory measure to keep guns out of the hands of those Congress deemed unfit to possess them. *See* 554 F.2d at 69–70, ("We note also that § 1202, despite its location within the federal criminal code, is essentially regulatory in nature."), 74–75; *compare Del Piano v. United States,* 575 F.2d 1066, 1067– 68 (3d Cir.1978) (recognizing the continued validity of *Burgett* and *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), and holding that a sentencing judge cannot consider prior convictions obtained without the assistance of counsel).

In *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the Supreme Court held that a prior conviction

that was flawed because the defendant was without counsel could constitute the predicate for conviction under the Gun Control Act, 18 U.S.C. Appendix II § 1202(a)(1). The *Lewis* court distinguished *Burgett* by treating the Gun Control Act as an "essentially civil disability." *Id.* at 67, 100 S.Ct. at 922. The court began its constitutional analysis by testing the statute as applied to unconstitutionally convicted felons against the "rational basis" test, the due process test traditionally used to scrutinize regulatory legislation. The court reasoned that "Congress could rationally conclude that any felony conviction, even an allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm." *Id.* at 66, 100 S.Ct. at 921. Relying on its view that the Gun Control Act imposed an essentially civil disability on the possession of firearms by felons, a "relatively modest inconvenience," *see Graves*, 554 F.2d at 75, the court concluded:

> Use of an uncounseled felony conviction as the basis for imposing a civil firearms disability, is not inconsistent with *Burgett, Tucker*, and *Loper* [*v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972)]. In each of those cases, this Court found that the subsequent conviction or sentence violated the Sixth Amendment because it depended upon the reliability of a past uncounseled conviction. The federal gun laws, however focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons. Congress' judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational. Enforcement of that essentially civil disability through a criminal sanction does not "support guilt or enhance punishment," *see Burgett*, 389 U.S. at 115, 19 L.Ed.2d 319, 88 S.Ct. 258, on the basis of a conviction that is unreliable when one considers Congress' broad purpose.

445 U.S. at 67, 100 S.Ct. at 921.

Despite the Supreme Court's efforts to distinguish the two cases, a tension exists between *Burgett* and *Lewis*. *See Lewis*, 445 U.S. at 72, 100 S.Ct. at 924 (Brennan, J., dissenting); Note, Sixth Amendment Limits on Collateral Uses of Uncounseled Convictions, 91 Yale L.J. 1000, 1006–1008 (1982). Nevertheless, *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), made clear that *Burgett's* central principles retain vitality. Baldasar did not have counsel at his first conviction, but he received only a fine and probation. Thus, under *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), the conviction was constitutional. In a subsequent prosecution, however, the state used that prior conviction to convert a misdemeanor to a felony with a prison term under the Illinois sentence enhancement statute. In a 5–4 per curiam decision, with no opinion commanding a majority of the court, the court reversed the conviction. Though the holding of *Baldasar* remains unclear, all nine justices agreed that had Baldasar's prior uncounseled conviction been a felony, it could not have been used to enhance his punishment under a recidivist statute. *See* 446 U.S. at 224 & n. *, 100 S.Ct. at 1586 & n. * (Stewart, J., concurring); *id.* at 226–228, 100 S.Ct. at 1587–88 (Marshall, J., concurring); *id.* at 233, 100 S.Ct. at 1590 (Powell, J., dissenting) ("an uncounseled felony conviction could not be used in a later trial to enhance punishment under a recidivist statute.").

Since *Baldasar*, federal courts consistently have acknowledged that *Burgett* prohibits the use of an unconstitutional uncounseled conviction to enhance sentence, particularly in the context of recidivist sentencing statutes. *See, e.g., United States v. Burt*, 802 F.2d 330 (9th Cir.1986); *Santillanes v. U.S. Parole Commission*, 754 F.2d 887 (10th Cir.1985); *Robards v. Rees*, 789 F.2d 379, 385 (6th Cir.1986); *Morse v. Texas*, 691 F.2d 770, 772–773 (5th Cir.1982); *Addvensky v. Gunnell*, 605 F.Supp. 334, 338–339 (D.Conn.1983). These cases distinguish use of a prior conviction in recidivist sentencing, where reliability is crucial and *Burgett* controls, from use of the mere fact of a conviction to further some regulatory

purpose, where *Lewis* controls. *See Santillanes,* 754 F.2d at 889; *Addvensky,* 605 F.Supp. at 338–339.

■ *Burgett* controls this case. As the Third Circuit recently decided, the ACCA is a sentence enhancement statute. *See United States v. Hawkins, supra.* Once a defendant is convicted for unlawful possession of a firearm, his prior convictions increase his sentence from a maximum of two years to a minimum of fifteen years without the possibility of parole or probation. In sentencing, especially where the penalty is severe, reliability matters. *See Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *United States v. Fatico,* 579 F.2d 707 (2d Cir.1978); *compare Lewis,* 445 U.S. at 67, 100 S.Ct. at 921 ("The federal gun laws, however, focus not on reliability, but on the mere fact of conviction or even indictment, in order to keep firearms away from potentially dangerous persons."). Uncounseled convictions are particularly unreliable. *See United States v. Cronic,* 466 U.S. 648, 654–656, 104 S.Ct. 2039, 2043–45, 80 L.Ed.2d 657 (1984). Using these convictions "against a person ... [to] enhance punishment for another offense" under the ACCA violates *Burgett. See Burgett,* 389 U.S. at 115, 88 S.Ct. at 262.

■ Unlike the ACCA, the Gun Control Act construed in *Lewis* and *Graves* is a regulatory statute. The Gun Control Act has the legitimate regulatory purpose of keeping firearms from those people Congress rationally concluded might be dangerous.[3] This prophylactic legislation sweeps broadly, keeping guns from dishonorable dischargees, mental incompetents, renounced citizens, and illegal aliens, *see* 18 U.S.C. Appendix II § 1202(a)(2), (3), (4), and (5), but regulatory legislation is entitled to

extreme deference. *See Lewis,* 445 U.S. at 65–66 & n. 8, 100 S.Ct. at 920–21 & n. 8; *Graves,* 554 F.2d at 70.

■ In contrast, the purpose of the ACCA is not to regulate the possession of firearms. In fact, the legislative history indicates that the ACCA became a part of the firearm statutes only as an afterthought. Identification and incapacitation of dangerous repeat offenders, not control of firearm possession, were the statute's purposes. *See* H.Rep. No. 98–1073, 98th Cong., 2d Sess. (1984), reprinted in 1984 U.S.Code Cong. and Admin.News 3661; *United States v. Hawkins,* at 216–17. Finding that a small number of recidivists were responsible for a great number of street crimes, Congress concluded that targeting these criminals for federal prosecution and prolonged incarceration would greatly reduce crime. H.Rep. No. 98–1073; 129 Cong.Rec. S295–297 (January 26, 1983) (remarks of Sen. Specter, the bill's sponsor). As originally proposed by Senator Specter, the bill was a federal robbery statute, to be added to chapter 103 of Title 18, the chapter dealing with federal robbery offenses. *See* 129 Cong.Rec. S297. However, problems arose with federalizing what was an offense traditionally left to state prosecutors. The National District Attorneys Association objected. *See* H.Rep. No. 98–1073, p. 4; 130 Cong.Rec. S1561 (February 23, 1984) (remarks of Sen. Kennedy, Exhibit 1). In response, Senator Specter proposed giving state prosecutors essentially a veto power over federal prosecutions under this bill. *See* 129 Cong.Rec. S297; 130 Cong.Rec. S1560 (February 23, 1984). In turn, the Justice Department objected to that proposal. *See* 130 Cong. Rec. S1562 (February 23, 1984). Senators Kennedy and Thurmond offered an amendment that would have restricted the bill to robberies which were already prosecuted in

---

**3.** We recognize that Lewis brought his case to the Supreme Court to protest not his inability to bear arms, but his criminal conviction. Nevertheless, the *Lewis* opinion emphasizes and turns on the civil nature of the Gun Control Act. Moreover, when a penal statute imposes relatively light sanctions for its violation, it may be treated as more civil than penal in nature, and

some of the protections usually afforded in criminal prosecutions may be dropped. *See, e.g., United States v. Engler,* 806 F.2d 425, 433–436 (3d Cir.1986) (holding that due process allows conviction for a strict liability offense with a maximum sentence of two years—the same maximum period of incarceration provided for by the Gun Control Act).

federal court, such as bank robberies. 130 Cong.Rec. S1558–69. Finally, to solve these jurisdictional difficulties, Congress settled upon attaching repeat offender provisions to the Gun Control Act. *See* 130 Cong.Rec. H10550–51 (October 4, 1984); H.Rep. No. 98–1073, pp. 4–5.

The Third Circuit's opinion in *United States v. Graves, supra,* reinforces our decision. There, the Third Circuit distinguished *Burgett* in three ways:

First, in contrast to *Burgett,* there is no obvious constitutional defect evident on the face of the record in the present case.

Second, Graves had available at least three means of attacking his prior conviction, or at least of ameliorating its effects, prior to his possession of firearms, whereas Burgett had no such recourse.

Third, *Burgett* was bottomed on a manifest abrogation of the right to counsel—a constitutional guarantee not asserted here.

554 F.2d at 80. An obvious and serious defect is evident in this case—deprivation of the right to counsel. *Graves* recognized that felony convictions obtained without counsel are especially unreliable, and, therefore, their collateral use should be severely restricted. 554 F.2d at 82.

The Third Circuit's second distinction reflects its treatment of the Gun Control Act as "essentially regulatory in nature." 554 F.2d at 69. Any outstanding conviction, even an unconstitutional one, raises doubts about a person's capacity to bear arms responsibly. The individual then has the burden of dispelling those doubts. "Congress expected a convicted felon to undergo the relatively modest inconvenience of a restriction on firearms use until he has obtained a judicial invalidation of his conviction or has secured an executive authorization lifting that restriction." 554 F.2d at 75. The Gun Control Act adds a penal sanction merely to compel observation of this "temporary disability." *See* 554 F.2d at 81; *see also Lewis,* 445 U.S. at 67, 100 S.Ct. at 921. In contrast, the ACCA's purpose is not regulatory, but punitive: the incapacitation of repeat offenders. *See*

*Hawkins,* at 216–17; *United States v. Brown,* 381 U.S. 437, 457–460, 85 S.Ct. 1707, 1719–21, 14 L.Ed.2d 484 (1965). A single felony conviction disables a person from possessing a firearm, thereby achieving the Gun Control Act's regulatory purpose. The subsequent convictions required under the ACCA add not any further regulatory effect, but years to the defendant's sentence.

### Remedy

■ Gantt's motion is one to dismiss the indictment. This relief is inappropriate. The ACCA only enhances the sentence available for a conviction under the Gun Control Act; it does not create a separate offense. *See United States v. Hawkins, supra.* Even though on the present record Gantt cannot be sentenced under the ACCA, any one of his convictions enables the government to try him under the indictment for violation of the Gun Control Act. *See Hawkins,* at 225 (Rosenn, J., concurring and dissenting) (even if an ACCA sentence is vacated, the Gun Control Act conviction will stand).

■ At sentencing, the government will bear the burden of proving the validity of the 1962 conviction if it seeks sentence enhancement under the ACCA. The certified record of the 1962 conviction on its face shows that Gantt lacked counsel. The government must prove any waiver of the right to counsel. *See Burgett,* 389 U.S. at 114–115, 88 S.Ct. at 261–62; *United States v. DuShane,* 435 F.2d 187, 190 (2d Cir. 1970).

### Conclusion

Unless the government proves that Gantt waived his right to counsel in his 1962 conviction, that uncounseled felony conviction cannot be used to enhance a sentence under the ACCA, 18 U.S.C. Appendix II § 1202(a). However, the government can still try him for violating the Gun Control Act, 18 U.S.C. Appendix II § 1202(a)(1). For these reasons, Gantt's

motion to dismiss the indictment will be denied.

An appropriate order will follow.