**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David GALLMAN, Defendant–Appellant.**

**No. 89–2509.**

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1990.

Decided July 5, 1990.

**640**

Loretta H. Davenport, Asst. U.S. Atty., Office of the U.S. Atty. and Barry R. Elden, Asst. U.S. Atty., Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Daniel G. Martin, Federal Public Defender, Office of the Federal Public Defender, Chicago, Ill., for defendant-appellant.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

On June 3, 1988, agents of the Department of Alcohol, Tobacco and Firearms received a tip from an informant that David Gallman, a convicted felon, had firearms in his automobile. They were told that Gallman intended to sell the firearms (which were stolen) after transporting them across state lines. On June 6, 1988, the ATF agents set up a sting. One of the agents acted as a prospective gun purchaser and met with Gallman. Gallman took the agent to his car, which was parked in the private parking lot of an apartment complex, and showed the agent some guns. The guns were in the car's trunk. Gallman also told the agent he had guns hidden inside the passenger/driver's compartment of the car, and showed him one that was hidden in an ice chest. Gallman offered to sell some guns to the agent for $900. The agent made the deal and left, ostensibly to get some money.

While away, the agent informed his fellow agents of what had transpired. He then rejoined Gallman. The other agents followed. They approached Gallman and asked for i.d., which they received. They ran an i.d. check on him that confirmed his status as a convicted felon. They then asked Gallman some questions. Gallman was not in a talking mood, however, and he left for his car. The ATF bunch left with him. The agents asked for permission to search the car. The permission was withheld. Gallman told the agents to arrest him or leave him alone, took out his car key, and moved to enter the car. At that point the agents placed Gallman under arrest.

After the arrest, the agents searched the car. They found the guns. They then had the car impounded and towed away.

Gallman was indicted on numerous offenses. He filed a motion to suppress evidence, but the motion was denied. He then reached a conditional plea agreement with the government whereby he pled guilty to violating 18 U.S.C. § 922(g)(1), felony possession of firearms, and 18 U.S.C. § 922(j), receiving stolen firearms. He was sen-

tenced pursuant to 18 U.S.C. § 924(e), which imposes an enhanced sentence on certain career criminals, and is now in jail.

## I.

In his appeal, Gallman takes two positions. First, he argues that the district court erred in denying his motion to suppress the evidence seized from his car. Obviously the ATF agents had probable cause to arrest Gallman. He does not dispute that. He does dispute, however, that the agents had probable cause to believe that his car carried contraband. In light of the facts, we consider this disputation somewhat frivolous. Probable cause exists where there exists " 'a fair probability that contraband or evidence of a crime will be found.' " *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). In this case, "fair probability" is an understatement of the likelihood of finding contraband in Gallman's car.

Nevertheless, Gallman argues that the search of his car was improper. He argues that under the dictates of the fourth amendment the ATF agents should have obtained a warrant. The government argues that the "automobile exception" to the fourth amendment's warrant requirement relieved the agents of that necessity.

■ Both parties recognize the existence of the "automobile exception." *See generally California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). That exception allows the warrantless search of an automobile where probable cause exists to believe the car contains contraband or other evidence of a crime. *See Carney, supra; Chambers, supra. See also United States v. Boden,* 854 F.2d 983 (7th Cir. 1988); *United States v. Rivera,* 825 F.2d 152 (7th Cir.), *cert. denied, Robles v. United States,* 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987). Thus, it seems to undermine Gallman's position. Yet Gallman is undaunted. He argues that the exception does not apply in this case because its underlying reasons do not apply.

■ Two reasons are said to justify the automobile exception: First, the "ready mobility" of an automobile creates circumstances in which it and the evidence could easily disappear; second, the pervasive regulation of automobiles creates a lesser expectation of privacy associated with them than with, for example, a dwelling. *Carney,* 471 U.S. at 390–91, 105 S.Ct. at 2069; *Rivera,* 825 F.2d at 158. Gallman argues that after his arrest the automobile was not readily mobile because he had been arrested and the agents had his key. These circumstances do indeed make the car less accessible to Gallman, but they do not make it less mobile. Gallman also argues that the "pervasive regulation" theory does not apply because his car was parked on a private lot and ATF agents are not involved in automobile regulation. But the pervasive regulation theory states merely that because of pervasive regulation a person's expectation of privacy in an automobile is much less than it otherwise would be. There is a low expectation of privacy in an automobile because of pervasive regulation in general. It is not the pervasive regulation *per se* that is important, but rather the low expectation of privacy. That low expectation remains even though the car is, at one moment, outside the main terrain upon which regulatory enforcement occurs, or even though the car is searched by authorities whose business does not include the regulation of automobiles. And it remains even though the particular search that is challenged was not at all a search pursuant to automobile regulation. Thus, inconsequential are the facts that Gallman's car was in an apartment parking lot and searched by ATF agents.

Gallman's arguments notwithstanding,[1] the underlying reasons for the automobile

---

1. Gallman also argues that the automobile exception should not apply because ATF agents had "reliable" information that Gallman had

several guns in his car on June 3, 1988, but waited until June 6, 1988 to spring their search. During the three day hiatus between the infor-

exception are applicable to this case. *See Carney*, 471 U.S. at 392–93, 105 S.Ct. at 2070. So too is the exception itself. *See United States v. Arango*, 879 F.2d 1501, 1507 (7th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990); *Boden, supra; Rivera, supra. See also United States v. Pace*, 898 F.2d 1218, 1243–1244 (7th Cir.1990) (dicta). The search of Gallman's car was constitutional[2] and the denial of Gallman's motion to suppress was appropriate.

## II.

Gallman next argues that the district court erred in enhancing his sentence under 18 U.S.C. § 924(e). If a person has three prior "violent felony" convictions when he violates 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(e)(1) calls for the imposition upon him of a minimum sentence of 15 years incarceration without chance for parole. Gallman had three prior convictions. He was convicted in 1967 for armed robbery after he pled guilty to the charge. He also was convicted in 1979 of burglarizing a pharmacy and in 1984 of burglarizing a residence. Thus upon his conviction for violating 18 U.S.C. § 922(g)(1) he was sentenced to a 15 year term. He now attacks the sentence in three ways.

■ First, Gallman asserts that 18 U.S.C. § 924(e)(1) violates the eighth amendment's principle of proportionality. It does not. *United States v. Dombrowski*, 877 F.2d 520, 526 (7th Cir.1989).

■ Second, Gallman asserts that his guilty plea in 1967 was not voluntarily and intelligently rendered. For a conviction to count under 18 U.S.C. § 924(e)(1) the conviction must have been constitutionally obtained. *See, e.g., United States v. Dickerson*, 901 F.2d 579 (7th Cir.1990). *See also United States v. Sullivan*, 897 F.2d 530 (6th Cir.1990) (unpublished order). *Cf. Burgett v. Texas*, 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967) (unconstitutional conviction may not "be used against a person either to support guilt or enhance punishment for another offense"); *United States v. Brown*, 899 F.2d 677 (7th Cir.1990) (conviction not voluntarily and intelligently rendered cannot be used for purposes of Sentencing Guidelines). And a conviction pursuant to a guilty plea that is not voluntarily and intelligently given is not constitutionally obtained. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *United States v. Davis*, 212 F.2d 264, 267 (7th Cir.1954). Thus if Gallman's 1967 plea of guilty was not voluntarily and intelligently entered, as those words are understood under the standard of the day,[3] Gallman does not have

---

mation and the search, Gallman argues, the agents should have obtained a warrant. This argument is subject to rebuttal on a number of grounds. We use only the readily obvious one. This is an automobile exception case. If the agents could have searched the car without a warrant on June 3, which assuming probable cause on that date they could, we see no reason why they could not do the same on June 6. The lapse of time does not change the nature of Gallman's car. It is still an automobile.

2. The government argues also that the search was justified as a search incident to a lawful arrest and as a proper inventory search. Although we need not decide if this was so, we note that the government's arguments are persuasive. *See Arango, supra.*

3. Gallman's 1967 plea is to be judged by the standards in use in 1967, not the standards in use after *Boykin, supra*, and *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Those standards are clearly enunciated in a long line of Seventh Circuit cases. The defendant must enter his guilty plea voluntarily and "with a full understanding of the nature of the charges made in the indictment, his available defenses and the nature and consequences of such plea." *United States v. Hetherington*, 279 F.2d 792, 795 (7th Cir.) (motion to withdraw plea), *cert. denied,* 364 U.S. 908, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960); *United States v. Marcus*, 213 F.2d 230, 232 (7th Cir.) (motion to withdraw plea), *cert. denied,* 348 U.S. 824, 75 S.Ct. 39, 99 L.Ed. 650 (1954). Evidence that the guilty plea "was unfairly obtained or given through ignorance, fear or inadvertence" will doom the plea. *Marcus*, 213 F.2d at 232. But a lack of express evidence conclusively proving the defendant's knowledge and freedom will not. *See Hetherington, supra; United States v. Kniess*, 264 F.2d 353 (7th Cir.1959) (28 U.S.C. § 2255 motion); *United States v. Swaggerty*, 218 F.2d 875 (7th Cir.) (motion to vacate plea), *cert. denied,* 349 U.S. 959, 75 S.Ct. 889, 99 L.Ed. 1282 (1955); *United States v. Searle*, 180 F.2d 209 (7th Cir. 1950) (motion to withdraw plea). Furthermore, to determine the defendant's knowledge and freedom of mind, no "particular ritual" is required in court: "A brief discussion with the

three section 924(e)(1) convictions on violent felonies and, accordingly, he would not be subject to section 924(e)(1) enhanced sentencing. *See Dickerson, supra.*

■ For purposes of section 924(e)(1), we believe that once the government has shown that a defendant has three prior "violent felony" convictions, the burden rests with the defendant to show that the conviction was unconstitutional.[4] *See United States v. Taylor,* 882 F.2d 1018, 1031 (6th Cir.) (once government introduces record certifying valid conviction, burden shifts to defendant), *modified,* 1989WL88622, 1989 U.S.App. LEXIS 19644 (1989); *Luna v. Black,* 772 F.2d 448, 450 (8th Cir.1985) (for burden of proof to shift to the government, accused must introduce evidence showing that conviction was unconstitutional). *See also Brown,* 899 F.2d at 680–681 (referring to Sentencing Guidelines). Thus, a defendant can overcome the government's proof of a conviction, but only if he musters evidence of that conviction's unconstitutionality. Here, Gallman thinks he has done so.

■ For evidence of unconstitutionality, Gallman has submitted a personal affidavit and a transcript of the 1967 guilty plea. The personal affidavit recites that Gallman does not "remember" being informed "of the elements of the crime or what the state would prove or anything like that"; it also recites that Gallman was ignorant and simply did as his lawyer directed. Gallman's affidavit can be discounted as proof positive of an unconstitutional conviction. It is largely self-serving. Moreover, a claim like his that one cannot remember being

informed of one's rights is not the same as claiming that one was not so informed. The transcript, however, cannot be so easily discounted. It reveals no discussion of a waiver of specific constitutional rights. It does reveal, however, that Gallman had discussed his case a number of times with his attorney. Among the things discussed were possible defenses. It also reveals that Gallman was not threatened or forced by anyone to plead guilty, nor was he promised anything by the prosecution. Further, it shows that Gallman understood that the court could not guarantee him what sentence he would get (although it shows that he did not understand this until the court explained it to him). The transcript then reveals that the court asked Gallman if he knew what he was doing, and Gallman said that he did. Finally, the transcript shows that Gallman pled guilty, and the court accepted the plea.

The question for us is whether the transcript shows that Gallman's 1967 plea was not voluntarily *and* intelligently rendered. We think that under the standard of the times, *see* note 3, *ante,* the transcript fails to make such a showing. It supports the government's claim that Gallman was aware of the nature of the charges against him, and that he had discussed his chances of success with his attorney. The gist of the transcript is that Gallman intelligently understood that his chances at trial were bleak, and that he could get a better "break" by pleading guilty. Nowhere, of course, does the transcript explicitly show that Gallman was intelligently aware of specific constitutional rights and the fact that he was waiving them.[5] But it does not

defendant regarding the nature of the charges may normally be the simplest and most direct means of ascertaining the state of his knowledge. Or there may be other circumstances from which it is evident that the defendant has the requisite understanding." *United States v. Davis,* 212 F.2d 264, 267 (7th Cir.1954). If from this it is clear that the defendant "ha[s] 'a broad understanding of the whole matter,'" then the guilty plea will not fail. *Kniess,* 264 F.2d at 356. *See also Hoelscher v. State,* 223 Ind. 62, 57 N.E.2d 770 (1944), *cert. denied,* 325 U.S. 854, 65 S.Ct. 1087, 89 L.Ed. 1975 (1945).

4. In some circumstances, for example, where the certified record of conviction indicates on

its face that the conviction was unconstitutional, the defendant's burden is automatically met and the defendant need introduce no evidence at all. *See, e.g., United States v. Gantt,* 659 F.Supp. 73 (W.D.Pa.1987) (where certified record of conviction shows "on its face" that defendant was without benefit of counsel, government has burden of proving otherwise). Needless to say, this is not such a case.

5. It does imply, however, that he was aware of those rights. Gallman may have been advised of his constitutional rights by his attorney outside of the proceeding. His attorney's statement in the proceeding (to which Gallman concurred) certainly indicates that this was the case.

need to. As long as Gallman's intelligent awareness can be reasonably inferred from the transcript or the custom and practice of the court, the guilty plea (and the conviction) passes muster. *See United States v. Hetherington,* 279 F.2d 792 (7th Cir.), *cert. denied,* 364 U.S. 908, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960); *United States v. Kniess,* 264 F.2d 353 (7th Cir.1959); *United States v. Swaggerty,* 218 F.2d 875 (7th Cir.), *cert. denied,* 349 U.S. 959, 75 S.Ct. 889, 99 L.Ed. 1282 (1955); *United States v. Marcus,* 213 F.2d 230 (7th Cir.), *cert. denied,* 348 U.S. 824, 75 S.Ct. 39, 99 L.Ed. 650 (1954); *United States v. Davis,* 212 F.2d 264 (7th Cir.1954); *United States v. Searle,* 180 F.2d 209 (7th Cir.1950). *See also Hoelscher v. State,* 223 Ind. 62, 57 N.E.2d 770 (1944), *cert. denied,* 325 U.S. 854, 65 S.Ct. 1087, 89 L.Ed. 1975 (1945).

The lack of explicit proof that Gallman was aware of his constitutional rights does not prove that he was unaware of those rights. The burden is on Gallman to produce evidence *showing* that his earlier conviction was unconstitutional. That burden he has failed to carry, for the evidence Gallman has produced—his affidavit and the transcript—show nothing.[6] Accordingly, Gallman's challenge to his 1967 conviction must fail.

■ Gallman's third assertion is that his 1979 conviction for burglary is not a conviction for a "violent felony" because the burglary was an unarmed one of a nonresidential building. The issue of what "burglaries" count for purposes of section 924(e)(1) has riled the courts of appeal, including this one. *See United States v. Dombrowski,* 877 F.2d 520, 527–28, 530 (7th Cir. 1989); *United States v. Dickerson,* 857 F.2d 414, 419 (7th Cir.1988). *See also United States v. Silkwood,* 893 F.2d 245, 250 (10th Cir.1989); *United States v. Patterson,* 882 F.2d 595, 604 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 737, 107 L.Ed.2d 755 (1990); *Taylor,* 882 F.2d at

1027; *United States v. Palmer,* 871 F.2d 1202, 1208 (3d Cir.1989); *United States v. Chatman,* 869 F.2d 525, 527 (9th Cir.1989); *United States v. Leonard,* 868 F.2d 1393, 1395 (5th Cir.1989); *United States v. Hill,* 863 F.2d 1575, 1581–82 (11th Cir.1989); *United States v. Portwood,* 857 F.2d 1221, 1223–24 (8th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2073, 104 L.Ed.2d 638 (1989); *United States v. Headspeth,* 852 F.2d 753, 758 (4th Cir.1988). Conflict existed among the circuits as to the proper resolution of the issue. The Supreme Court recently visited the question of section 924(e) burglaries, however, laying that conflict to rest. In *Taylor v. United States,* —— U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Court made clear the burglaries that qualify as section 924(e) violent felonies:

> [A] person has been convicted of burglary for purposes of § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

*Taylor,* at ——, 110 S.Ct. at 2158. The Court did not make its definition of burglary turn on such niceties as whether the building or structure invaded is residential or nonresidential or whether the person doing the invading was armed or unarmed; indeed, the Court several times indicated that such niceties are irrelevant. *See, e.g., id.,* at ——, 110 S.Ct. at 2157 ("Congress presumably realized that the word 'burglary' is commonly understood to include not only aggravated burglaries, but also run-of-the-mill burglaries involving an unarmed offender, an unoccupied building, and no use or threat of force."). Gallman's plea for relief, based as it is on the nonresidential, unarmed nature of his burglary, therefore amounts to naught. In 1979 Gallman was convicted of a crime that "substantial-

---

**6.** We note that Gallman has not tried to produce from his attorney in the 1967 case any evidence about the information the attorney gave to Gallman, nor has he produced from the Indiana state court all of the transcripts from the 1967 pre-trial proceedings, some of which may have

shed light on the actual state of Gallman's knowledge. We also note that although the conviction was in 1967, and although Gallman has had reappearances in court since that date, this is the first time the constitutionality of the 1967 conviction has been raised.

ly corresponds to 'generic' burglary" as defined by the Court.[7] *See id.,* at ——, 110 S.Ct. at 2160. Thus, his conviction counts for section 924(e)(1) enhancement purposes.[8]

In sum, Gallman's challenges to his enhanced sentencing are unavailing. The statute does not violate the eighth amendment, and his 1979 burglary is encompassed by the term "violent felony." Moreover, Gallman's 1967 guilty plea, though not pretty, was constitutionally adequate at the time it was entered.

The judgment of the district court is AFFIRMED.

---

7. Gallman's burglary conviction (which was in Illinois) followed a plea of guilty. In 1979 when Gallman was convicted Illinois defined burglary thusly:

> A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle ... railroad car, or any part thereof, with intent to commit therein a felony or theft.

ILL ANN.STAT. ch. 38, para. 19–1 (Smith–Hurd 1977). This statute comports well with the Court's "generic burglary." It is somewhat broader, however; by it, one can be a burglar when unlawfully entering something other than a building or structure. When faced with a statute such as this, a court should refer to the "indictment or information and jury instructions" or, in the case of a guilty plea, to the plea agreement or transcript, in order to determine if the conviction was for "generic," as opposed to mere state-defined, burglary. *Taylor, supra,* at —— – ——, 110 S.Ct. at 2159–2160. The record in this case indicates that Gallman's conviction arose from his early-morning invasion of a pharmacy. Thus, the record shows that Gallman was convicted of a "building" burglary, generic to the core.

8. The government argues that Gallman's plea agreement precludes him from raising this issue. This appears to be the case. We need not decide the issue, however, because it is clear that Gallman's burglary is a "violent felony" for the purposes of section 924(e)(1).